# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**ANDREW K. MITCHELL,**<br><br>Defendant. | **CASE NO. 2:19-CR-053**<br>**CHIEF JUDGE SARGUS**<br>**MAGISTRATE JUDGE JOLSON** |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE PRETRIAL DETENTION ORDER

The United States of America, by and through undersigned counsel, opposes Defendant Andrew K. Mitchell's motion to revoke Magistrate Judge Jolson's pretrial detention order. (*See* ECF No. 13.) Judge Jolson properly found that there were no conditions of supervised release that would reasonably assure the defendant's appearance or the safety of the community. (ECF No. 11.) The Court should affirm her detention order, and the defendant's motion should be denied.

### 1. BACKGROUND

On March 7, 2019, the grand jury returned a seven-count sealed Indictment against the defendant. (ECF No. 3.) In Counts One, Two, and Three, the grand jury found probable cause to believe that the defendant, acting under color of law, deprived the rights of two victims by kidnapping them and forcing them to have sex for their freedom. Counts One, Two, and Three each carry a penalty of up to life imprisonment. 18 U.S.C. § 242. In Counts Four and Six, the grand jury found probable cause to believe that the defendant had tampered with two different witnesses with the intent to hinder, delay, or prevent the communication of information to federal

law enforcement officers. In Count Five, the grand jury found probable cause to believe that the defendant had obstructed justice by endeavoring to influence, obstruct, or impede an additional witness's testimony before the grand jury. In Count Seven, the grand jury found probable cause to believe that the defendant had made a material false statement to agents of the Federal Bureau of Investigation. The grand jury also found probable cause to support a forfeiture allegation for any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses in the Indictment.

On March 11, 2019, the defendant was arrested, pursuant to the sealed Indictment, and appeared before Judge Jolson for his initial appearance. (*See* ECF No. 7.) At the defendant's initial appearance, the United States orally moved to unseal the case, including the Indictment and arrest warrant, which the Court granted. (*Id.*)

A detention hearing was held before Judge Jolson on March 13, 2019. (*See* ECF Nos. 10, 11, 12.) During that hearing, the United States presented evidence of the defendant's corrupt activities as a police officer abusing his office in the most egregious way possible. In addition to relying on the Indictment returned by the grand jury, the United States proffered evidence regarding the nature and seriousness of the offenses charged, the relevant severe penalties, and the fear of the defendant as expressed by the victims and witnesses. The United States also proffered evidence about the defendant's extensive training and employment as a law enforcement officer, as well as his past and continuing record of dishonesty and obstruction. At the conclusion of the hearing, Judge Jolson found that no condition or combination of conditions would reasonably assure the defendant's appearance or the safety of the community, and ordered him detained. These findings were memorialized in an order of detention. (ECF No. 11.)

Five days later, on March 18, 2019, the defendant's counsel filed the instant motion to revoke Judge Jolson's detention order. (ECF No. 13.) A hearing on this motion is scheduled for

March 21, 2019, the same day as the defendant's arraignment. (ECF No. 14.)

## 2. LAW

This Court reviews a magistrate judge's detention order *de novo*. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000). Judicial officers must order pretrial detention upon a finding that no condition or combination of conditions of release will reasonably assure either the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e). Judges shall consider several factors in making this determination, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to the community that the defendant's release would pose. *Id.* § 3142(g); *Yamini*, 91 F. Supp. 2d at 1126–27.

## 3. ARGUMENT

The defendant should stay detained pending trial. Judge Jolson already conducted an extensive detention hearing after entertaining lengthy oral argument from counsel. At the conclusion of the hearing, she issued detailed findings showing why the defendant's use of "his position as a law enforcement officer" to commit the crimes alleged led her to conclude that "he is a risk of flight and a danger to the community, and no set of conditions can provide reasonable assurances otherwise." (ECF No. 11, at PageID #36.) In doing so, Judge Jolson found that the United States had proved by (1) clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community; and (2) by a preponderance of the evidence that no condition or combination of conditions would reasonably assure the defendant's appearance as required. (*See id.* at PageID #35.) The evidence has not changed in the last seven days; nor should the outcome.

***The Nature and Circumstances of the Offenses Charged.*** The Court must first consider "the nature and circumstances of the offense charged." 18 U.S.C. § 3142(g)(1). The nature and circumstances of the offenses charged merit the defendant's continued detention because they reflect both a risk of flight and of dangerousness to the community. Start with risk of flight: if convicted, the defendant faces up to life imprisonment on each of Counts One, Two, and Three; up to twenty years of imprisonment on each of Counts Four and Six; up to ten years of imprisonment on Count Five; and up to five years of imprisonment on Count Seven. The length of a potential sentence bears on a defendant's risk of flight. *See United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009).

As for dangerousness to the community, the defendant is charged with engaging in crimes of violence and obstructive conduct in order to conceal his criminal conduct. As Judge Jolson found, "these counts [1, 2, and 3] charge that the defendant used his badge, the fact that he is a law enforcement officer...and then proceeded to kidnap or attempt to kidnap them and rape them in a variety of ways." Not only did the defendant commit these crimes of violence, he also tampered with witnesses, obstructed justice, and lied to federal law enforcement agents. The nature and circumstances of the offenses charged merit the defendant's continued detention.

***The Weight of the Evidence Against the Defendant.*** The Court must next consider the weight of the evidence. 18 U.S.C. § 3142(g)(2). This factor speaks to the weight of the evidence of the defendant's nonappearance or dangerousness, not the underlying crime for which he stands accused. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). But, where, as here, the defendant is charged with a dangerous offense, the inquiry is intertwined. *United States v. Lee*, 195 F. Supp. 3d 120, 129–30 (D.D.C. 2016).

4

Judge Jolson found that this factor provided another basis for detention and, in fact, made a special finding in this regard in her written detention order, making clear that, in addition to the findings made on the record at the hearing, she was ordering detention because the "[w]eight of the evidence against the defendant is strong." (ECF No. 11, at PageID #35.)  The evidence has not changed in the past seven days.[1]  The defendant, while acting under color of law as a police officer, kidnapped the victims – under the guise of an arrest – and forced the victims to have sex for their freedom.  The defendant then continued to engage in criminal activity after knowing he was under federal investigation.  The evidence against the defendant includes testimony from multiple victims who will identify the defendant as the police officer who committed the crimes alleged in the Indictment.  This testimony is corroborated by other evidence, including additional witnesses, geolocation and cell-site location information from the defendant's cell phones, the defendant's financial records, and recorded jail calls.  Moreover, after the defendant was arrested and the Indictment was unsealed, several witnesses have provided information to the United States about additional criminal conduct by the defendant.  Thus, the weight of the evidence against the defendant is strong and provides yet another basis for his detention.

***The History and Characteristics of the Defendant.***  The Court must also consider the history and characteristics of the defendant, including his character, employment, ties to the community, and past conduct.  18 U.S.C. § 3142(g)(3).  As shown during the detention hearing, the defendant's

---

[1] Although defense counsel has questioned the United States's reliance on the Indictment returned by the grand jury, rather than other means such as putting on a witness, as if in a trial setting, the law in this circuit (and others) is clear: "[T]he government may proceed in a detention hearing by proffer or hearsay." *United v. Webb*, 238 F.3d 426, 2000 WL 1721060, at *2 (6th Cir. Nov. 6, 2000) (per curiam).  In truth, the United States is not required to call *any* witnesses at the detention hearing.  *Stone*, 608 F.3d at 948–49 ("[Conducting a bail hearing by proffer is acceptable under the law and at the discretion of the district court."); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("Every circuit to have considered the matter . . . [has] permitted the Government to proceed by way of proffer.").

character – especially his character for truthfulness – is low.  Despite learning of the federal investigation on September 26, 2018, the defendant continued to engage in his criminal conduct. Since then, he has lied to federal law enforcement agents, tampered with witnesses, and engaged in obstructive behavior.  He has repeatedly demonstrated that he does not respect the authority of law enforcement or the courts.[2]  Against this experience, the defendant offers only the forward-looking assertion that he will now respect the judicial system he has previously undermined and will now provide truthful information about his own conduct, which he has lied about in the past.

The defendant's employment and ties to the community are misleading.  In addition to his approximately thirty-year employment as a police officer, the defendant points to his secondary employment as a landlord.  But the federal investigation has identified multiple women – some of whom work as prostitutes, most of whom are drug addicts, all of whom are vulnerable members of our community – who were tenants of the defendant's rental properties and traded sex for free or reduced rent from him.  The defendant's secondary employment is as equally troubling as his primary employment.

Moreover, courts have repeatedly held that strong ties to the community or the presence of one's family nearby "has no bearing on the 'safety of the community' analysis for purposes of assessing likelihood of dangerousness." *United States v. Hir*, 517 F.3d 1081, 1088 n.4 (9th Cir. 2008).  Instead, community and family ties bear only upon determining the defendant's risk of flight. *Id.* (citing S.Rep. No. 98-225, at 24 ("noting that 'with respect to the factor of community ties . . . this factor . . . has no correlation with the question of the safety of the community'")); *United States v. Evans*, No. 17-207, 2018 WL 317958, at *3 (W.D. Pa. Jan. 8, 2018) ("Evans has

---

[2] Despite his representation that he has cooperated with law enforcement by providing his DNA, (*see* ECF No. 13, at PageID #41), the defendant ignores the fact that he did so pursuant to a judicially authorized search warrant after a magistrate judge found probable cause that he had committed crimes and/or was committing crimes.

strong ties to this district and his family here. These facts do not bear on his dangerousness to the community."). The defendant revealed his true colors with respect to his employment and community ties when he repeatedly abused the power of his office and badge to commit egregious crimes of violence against some of the most vulnerable members of our community. And rather than having the utmost respect for the law, as a law enforcement officer for nearly thirty years would be expected to maintain, he used his knowledge of the system to tamper with witnesses, obstruct justice, and lie to federal law enforcement agents. All of this speaks to the defendant's history and characteristics.

***The Nature and Seriousness of the Danger to the Community that the Defendant's Release Would Pose.*** Finally, the Court must consider the nature and seriousness of the danger to the community that the defendant's release would pose. 18 U.S.C. § 3142(g)(4). The defendant, because of his law enforcement training, poses unique risks for Pretrial Services. He is experienced in law enforcement techniques and has shown, during the course of the federal investigation, knowledge of counter-law enforcement techniques, including techniques to evade surveillance.[3] And while the defendant relies heavily on the report of Pretrial Services, he fails to recognize that Pretrial Services can neither consider the circumstances of the offenses charged nor the potential penalties, all of which are severe here.

More significantly, in terms of the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, the victims and witnesses who will provide testimony against the defendant are terrified of him. They fear that they will be retaliated against by the defendant and other law enforcement officers because they have come forward to

---

[3] Of note, during the execution of a search warrant at his residence on September 26, 2018, agents uncovered at least seventeen firearms.

provide evidence against a police officer. These fears are not unfounded. Multiple victims, when asked if they had reported these incidents, consistently responded that they could not "report it to the police because it *was* the police." The defendant further instilled these fears by telling them "even if you reported me, no one will believe you *because you are just a prostitute*."

The defendant makes several misstatements, which require correction. He first contends that there were multiple levels of "Government inaction," (*see* ECF No. 13, at PageID #44–45), necessitating the conclusion that the defendant poses no danger to the community. Specifically, the defendant contends that because he was indicted on Thursday, March 7, 2019, but not arrested until Monday, March 11, 2019, he does not pose a threat to the community. The Indictment, however, once returned by the grand jury, *was ordered to be sealed*. Due to the potential dangerousness of the defendant – a trained law enforcement officer – as well as the concern for public safety, significant steps had to be taken to plan for the defendant's arrest. Far from "Government inaction," as the defendant contends, the days between when the Indictment was returned by the grand jury and when the arrest warrant was executed were filled with immense preparation and planning for an incident-free and respectful arrest.

The defendant also sarcastically contends that because he has been continually employed by the Columbus Division of Police, he poses no danger to the community. (*See* ECF No. 13, at PageID #45 ("We certainly hope that the Government would have gotten this dangerous monster off the streets of Columbus before he had the potential to terrorize citizens of Columbus.").) The defendant ignores a critical fact: that he was officially relieved of duty on September 26, 2018, at the airport right after he made false statements to agents of the Federal Bureau of Investigation. Upon being relieved of duty, he immediately had to turn in his badge and firearm. The defendant has had no police powers since that date. Far from working the "streets of Columbus," he has been assigned to desk duty since September 26, 2018.

8

The defendant engaged in the commission of crimes of violence, tampered with witnesses, obstructed justice, and lied to federal law enforcement agents – all while showing no remorse for his victims and the general public, to whom he swore an oath to protect. Now, the defendant faces exposure to significant criminal penalties if he is convicted. This, combined with the record of his crimes of violence and his obstructive conduct after he found out about the investigation, led Judge Jolson to conclude that the defendant should be detained due to the nature and seriousness of his danger to the community.

### 4. CONCLUSION

For these reasons, the United States respectfully requests that the Court deny the defendant's motion to revoke Judge Jolson's pretrial detention order. (ECF No. 13.) The defendant should remain detained pending trial.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney


s/Jessica H. Kim
JESSICA H. KIM (0087831)
KEVIN W. KELLEY (0042406)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Jessica.Kim@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served this 20th day of March 2019, electronically on all counsel of record.

s/Jessica H. Kim
JESSICA H. KIM (0087831)
Assistant United States Attorney
