**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO: 2:19-cr-53 |
| v. | : | JUDGE EDMUND A. SARGUS, JR. |
| ANDREW K. MITCHELL, | : | |
| Defendant. | : | |

**SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE DOWNWARD TO THE ADVISORY GUIDELINES ON BEHALF OF ANDREW MITCHELL**

Defendant, Andrew K. Mitchell, hereby submits the following sentencing memorandum for this Court's review and consideration. The purpose of the Sentencing Memorandum is not to minimize or excuse Andrew's involvement, or his acknowledgement and acceptance of his responsibility. Rather, it is to provide context and to assist this Honorable Court in fashioning a sentence it deems appropriate.

**A. PROCEDURAL HISTORY**

On March 7, 2019, an indictment was filed against the Defendant for three counts of deprivation of rights under color of law, two counts of witness tampering, one count of obstruction, and another count of false representation. (ECF No. 3, Indictment)

On April 18, 2019, a Superseding Indictment was filed against the Defendant and charged him with nine counts including the original charges in the initial indictment, as well as two additional counts: obstruction and destruction of property, along with a forfeiture allegation. (ECF No. 4, Superseding Indictment). On December 7, 2023, a plea agreement was filed and a change of plea hearing was held, whereby the Defendant entered a guilty plea to counts 1, 2, and

1

8, of the superseding indictment, deprivation of rights under color of law, in violation of 18 U.S.C. § 242 and 18 USC §1512(c)(1). (ECF No. 78, Plea Agreement).

An initial presentence investigation report (PSR) was prepared (ECF No. 81, PSR, PageID#315-348), and the final PSR was prepared and filed on March 6, 2024. (ECF No. 82, PSR, PageID#349-386) and this matter is now scheduled for sentencing on May 9, 2024. (ECF No. 83, Notice, PageID#387).

### B. OBJECTIONS TO PSR

There are three unresolved objections to the PSR. (ECF No. 82, PSR Addendum, PageID#377-380) Defense Counsel objects to all references of sexual assault, as it was not agreed to in the statement of facts, nor contemplated by the plea agreement that the parties relied on in coming to an agreed upon sentencing range of 84 – 132 months imprisonment.

The second objection rests with the two-level enhancement for the Defendant receiving two separate enhancements based on his title of a police officer and public official, as all police are public officials.

The final objection rests with the application of a two-level enhancement for a "vulnerable victim." Here, the government and probation officer rely on drug usage that Mr. Mitchell should have known about when no indicia of drug usage existed in order to import the vulnerable victim enhancement.

Pursuant to *United States v. Volkman,*
> "Drug addiction, standing alone, cannot serve as the basis for applying the vulnerable-victim enhancement." *United States v. Volkman*, 797 F.3d 377, 398 (6th Cir. 2015). If, however, the victim is vulnerable due to drug addiction and additional traits or circumstances, then application of the enhancement is appropriate. *Id*. at 398–99 (finding the enhancement applicable because the victims suffered from drug addiction and various mental-health conditions). Although the defendant is not required to "target" the victims because of their vulnerability, there must be some reason the vulnerability makes the victim "particularly susceptible to the criminal conduct," U.S.S.G. § 3A1.1 cmt.2; *United States v. Brawner,* 173 F.3d 966, 973 (6th Cir. 1999), see also *United States v. Wilson*,

2

561 F. App'x 451, 452–53 (6th Cir. 2014) (finding the "incarcerated victims were particularly susceptible to the defendant's fraudulent offer of legal services because the victims had "limited education, cognitive abilities, and ability to understand the legal technicalities of their case, and" maintained "limited communication with . . . the outside world").

Defense Counsel submits that Mr. Mitchell did not know, nor should he have known, that either one of the victims were allegedly "dope sick" or going through "heroin withdrawals." Furthermore, the government cannot prove that Mr. Mitchell knew or should have known that the prosecuting witnesses classified as "vulnerable victims" based on the timeframe for which each prosecuting witness was detained. According to American Addiction Centers, withdrawal symptoms for heroin typically do not manifest, on average until 8-24 hours from last consumption.[1] Andrew did not detain the victims for long enough to know if they were going through symptoms of withdrawal. Furthermore, short of possessing a timeline of when the victims' last heroin usage was, the government is unable to prove the alleged facts that make up this enhancement, as it is reasonably disputed per §6A1.3.[2]

### C. LAW APPLICABLE TO SENTENCING DECISION

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court found that the Sentencing Guidelines are but one of many factors for this Court to consider in determining an appropriate sentence. That means that the judge, at sentencing, is obligated to impose a sentence which is "sufficient, but not greater than necessary" to achieve the broad social purposes of sentencing described in 18 U.S.C. § 3553(a)(2).

In determining whether a sentence is minimally sufficient to comply with the § 3553(a)(2) purposes of sentencing, the court must consider several factors listed in § 3553(a)(1)–(7), which are outlined below. *Rita v. United States*, 551 U.S. 338, 347–48 (2007). The weight to be accorded

---

[1] https://americanaddictioncenters.org/withdrawal-timelines-treatments
[2] Pursuant to §6A1.3 of the U.S.S.G, this is a fact and factor that is reasonably disputed.

3

each factor is a matter for the Court to determine in its sole discretion;[3] however, a sentence must be "reasonable" and the Court "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 46, 50 (2007).[4] Thus, reasonableness is when a judge considers the PSR, the Guidelines, the § 3553(a) factors, and arguments from the prosecution and defense regarding the appropriate sentence. *See Rita*, 551 U.S. at 351.

The *Booker* decision also allows this Court to consider factors which the Guidelines previously precluded a court from considering, such as a defendant's age, education and vocational skills, mental and emotional condition, physical condition, family ties and responsibilities, socioeconomic status and any other factors that make each human being and each case unique. *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005). 18 U.S.C. § 3661 also specifies that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

**D.  FACTORS RELEVANT TO SENTENCING DECISION**

**(a)(1) Nature and circumstances of the offense and the history and characteristics of the defendant.**

The **nature and circumstances of the offense** are stated in paragraphs 18 to 30 in the PSR. (ECF No. 92, PSR ¶¶18-30, PageID#354-357). Defense Counsel directs this Honorable Court to the objection concerning any reference to any type of sexual relationship between Andrew and any of the prostitutes. Had the Defendant been faced with a statement of facts or plea agreement that incorporated any of the conduct that the PSR referenced, the potential for a trial was much greater

---

[3] Many of the factors relevant to 18 U.S.C. § 3553(a)(1)–(7) overlap with factors that are relevant to Guideline determinations, including departures.
[4] If "reasonableness" was equated with a Guideline sentence, such a standard "would effectively reinstitute mandatory adherence to the Guidelines" that was condemned in *Booker*. *United States v. Webb*, 403 F.3d 373, 385 n.9 (6th Cir. 2005).

4

than that of the agreed upon terms by the parties. As noted in PSR ¶28, the defendant denies having had sex with prostitutes but does per the statement of facts as incorporated by the plea agreement acknowledges and takes responsibility for handcuffing the prosecuting witnesses and detaining them against their will.

Andrew accepted responsibility for his actions by entering a guilty plea and through his discussions with the USPO.

All parties signed a plea agreement that contemplated a sentencing range of imprisonment between 84-132 months.

The **history and characteristics of this defendant** are important for this Court's consideration, and are well laid-out in the PSR. (ECF No. 82, PSR ¶¶88-125, PageID#366–373).

Andrew Mitchell is a 60 year old man with no prior record.

Both the guidelines and the Sixth Circuit explicitly acknowledge that age, "and specifically old age" is a relevant consideration in sentencing. U.S.S.G. §5h1.1; *United States v. Berry*, 565 F. 3d 332, 341 (6th Cir. 2009); *United States v. Davis*, 537 F.3d 611, 616-17 (6th Cir. 2008). The Sentencing Commission has observed that "recidivism rates decline relatively consistently as age increases."[5] *United States v. Payton*, 754 F. 3d 375, 379 (2014). In *Payton*, the court reviews studies that support the argument that "elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have no utilitarian benefit. Because of health or other reasons, elderly offenders have the lowest rate of recidivism; in fact, only about one percent of elderly offenders ever face a second conviction." *Id*.

---

[5] United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12 (2004) *available at*<http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf>.

5

Andrew Mitchell's 60 years of age, coupled with the studies and sentencing guideline, along with his lack of criminal history all support a sentence contemplated by the plea agreement of 84 months. Upon release of the federal institution, it is highly unlikely that Andrew will recidivate, especially if the Court considers an additional two more years on top of what Andrew has already served. By that time, Andrew will have reached age 62 as he climbs further away from likeliness to recidivate and toward his advanced age.

Andrew is from Delaware, Ohio where he lived until his incarceration PSR ¶93. He was born to Donald and Thelma Mitchell PSR ¶93. In 2019, his father died at age 85 due to a heart condition, while his mother is still living in Delaware, Ohio PSR ¶93. Andrew maintains a close relationship with his mother and four siblings: Deborah Chapman, age 69, and is employed in an administrative office of a hospital; Dennis Mitchell, age 66, who is a retired educator; Gail Cousar, age 62, and is employed by Chase Bank, and Judit Mitchell, age 61, and is a school counselor. PSR ¶93. None of his siblings have criminal records.

Andrew (and his siblings) were raised by his parents in a loving stable and structured home. PSR ¶94. While disciplined for his mistakes, neither he nor his siblings suffered from any physical, mental, emotional, or sexual abuse. For all intents and purposes, Andrew had a "normal" childhood, full of love and busy with extracurricular activities that his mother was able to sustain and raise five children while his father was the bread-winner PSR ¶94.

After graduating high school, Andrew attended Ohio State University where he earned his bachelor's degree in criminology and criminal justice. Thereafter, he entered OPOTA PSR ¶95. He has been married twice, and has no biological children PSR ¶95 - 96. However, Andrew and his wife, Tanya McLymont-Mitchell are in the process of adopting Kamryn Morgan, age 8, who they have had legal guardianship of since she was 8-months old PSR ¶96. Tanya fully intends on

remaining married to Andrew and the both of them are looking forward to seeing the adoption of Kamryn all the way through and continuing to raise her in a loving home PSR ¶101.

Andrew has always possessed a strong work ethic, as his employment history demonstrates, and former colleague has said in paragraphs 105 – 107, and 115 – 119 of the PSR. He has worked in almost every division that the police department offered PSR ¶115. He never had a serious compliant or sexual advancement compliant filed against him prior to August 23, 2018, when he was stabbed, choked, and then involved in an on-duty shooting where he was subsequently exonerated of all charges associated with that State prosecution PSR ¶116. While retired from the department in bad standing, he has been able to help financially with Kamryn through his retirement and the sales of all but two of his rental properties.

Concerning his physical health, he is diagnosed with Type II diabetes, high blood pressure, high cholesterol and a non-cancerous enlarged prostate gland PSR ¶109. He has no history of substance abuse, and has no history of mental or emotional health history.  PSR ¶111-112.

Andrew's support network that he will lean on upon release is unlike the majority of support networks that this Court is accustomed to seeing.  In addition to the unconditional love and support by his wife, each of his siblings and his mother, Andrew is also supported by fellow and former brethren of the Columbus Police Department.  Defense Counsel has attached several of the fifteen of the letters received of support from his family, fellow and retired Columbus Police brethren, who all vouch for the continued support help him get on his feet and continue down his path toward rehabilitation and being born again as a productive member of society. (Exhibit A).

His support system is unparalleled and his support network now knows more than ever exactly how to support Andrew in times of dire need.  While each person vows to work to make sure times are never dire again, their commitment to now knowing how to accomplish this is

7

unmatched. Defense Counsel has also attached a letter from the biological aunt (Melony Ross) of Kamryn, the Mitchells' soon-to-be-adopted daughter.  The letter details the heartbreaking process of receiving a call from Franklin County Children Services about a three-month old baby born to an addict mother, an absent father, born going through opiate withdrawals.  The temporary placement of Kamyrn with Melony and her husband was not going to work out, and they were not in a situation to keep Kam on a permanent basis, so Miss Ross details the actions of Andrew and Tanya which she deems as "the unthinkable," in taking Kamryn with the understanding and hopeful hearts of raising her.

> **(a)(2) the need for the sentence imposed –**
> **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
> **(B) to afford adequate deterrence to criminal conduct;**
> **(C) to protect the public from further crimes of the defendant; and**
> **(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**
> **(a)(3) the kinds of sentences available;**
> **(a)(4) the kinds of sentence and the sentencing range established for –**
> **(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines….**

In this case, Congress has said that for a violation of 18 U.S.C. § 242, the maximum term of imprisonment up to life, a term of supervised release not to exceed five years, and a fine not to exceed $250,000,  with a mandatory special assessment fee of $100 per count.

In this case, Congress has said that for a violation of 18 U.S.C. § 1512(c)(1), the maximum term is 20 years, a term of supervised release not to exceed three years, a fine not to exceed $250,000 and a $100.00 mandatory special assessment fee.

Congress also made available a sentence calculated according to the Sentencing Guidelines created by the United States Sentencing Commission.  *Gall v. United States*, 552 U.S. 38, 49 (2007) (explaining that the Guidelines are the "starting point and the initial benchmark" for federal

8

sentencing). In this case, the Guideline imprisonment range is life, based on a total offense level of 43 and criminal history category of I. (ECF No. 82, PSR ¶87, PageID#365)

Defense Counsel submits that while the guidelines that the PSR author calculated are "life," that the government assessed the worth of its case of at least 7 years (84 months) but not to exceed 11 years and gave Andrew the opportunity for an 11(c)(1)(c) plea that the Court accepted. This range is what the government deemed appropriate after expertly evaluating the evidence or lack thereof. Such a valuation as compared to the life guideline calculation is indicative of the confidence and likelihood of being able to pursue the convictions that could have carried a life imprisonment penalty. This sentiment should not be underscored. The government is the only party in this action equipped with *all* of the information or evidence against the defendant, and it still chose to extend an offer knowing that this Honorable Court could impose a sentence of 84 months pursuant to the plea agreement.

Defense Counsel submits that this Court should follow the plea agreement, and sentence Andrew to 84 months, or a sentence on the lower end of the range that was agreed upon by the parties. Incarceration of 84 months will achieve the purposes and principals of sentencing set forth in the § 3553(a) factors. Based on Andrew's history and characteristics, the nature and circumstances of the offense, and the available sentences, Andrew respectfully requests this Court impose a sentence of 84 months. Andrew has never done something like this before. He has no criminal history, is educated, was gainfully employed and comes from a solid family. Given the unique circumstances surrounding this offense, Andrew's lack of prior contact with the criminal justice system, and his behavior during the pendency of this case, appropriate punishment could be achieved through incarceration of 84 months. This would allow Andrew to continue his

rehabilitation while continuing to pay his debt to society for betraying society's trust as a law enforcement officer.

In light of the § 3553(a) factors, the recommended sentence the parties would be reasonable and would satisfy § 3553(a)(2) because such a sentence would reflect a just punishment for a serious offense and will afford adequate deterrence for this type of criminal conduct. Andrew is not a risk to reoffend and will pose no danger to the public if supervised under the appropriate terms and conditions, as he has been in custody, and has surrendered his OPOTA certificate and gave up his career in law enforcement. This kind of behavior can never be repeated, and will bever be repeated. While Andrew's conduct was serious, he has accepted responsibility and his own self-awareness and the community support will help him avoid any future criminal activity.

**(a)(5) any pertinent policy statement.**

Andrew has not identified any policy statements at issue here except the resolution of disputed factors under §6A1.3 already cited.

**(a)(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

This factor addresses "national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct" *United States v. Simmons*, 501 F.3d 620, 623–24 (6th Cir. 2007).

Even though Defense Counsel objects to the sexual conduct references in the Final PSR, there are other cases with similarly situated defendants, where defendants have served less time than what Defense Counsel is asking for here in this instance.

In Colorado, a former Westminster police officer who sexually assaulted a drunken woman in his custody was sentenced on a federal civil rights charge to six years in prison (*United States of America v. Curtis Arganbright*, 1:19-cr-445, District of Colorado). According to reports on the

10

case, the defendant in that case, Mr. Arganbright, had a prior record and a prior history of sexual assault, as he pleaded guilty to sexual assault charges in 2017.

In California, Nakie Nunley pleaded guilty to four counts of sexual abuse of a warn, five counts of abusive sexual contact, and one count of making false statements in connection with the investigation into abuse allegations at FCI Dublin, and received a prison sentence of 6 years (*United States of America v. Nakie Nunley*, 4:23-cr-00213, Northern District of California, ECF #32). It is reported that the plea agreement in that case that the defendant not only sexually abused five different prisoners, but also retaliated against women who attempted to blow the whistle.

This Honorable Court just presided over a trial whereby a Defendant was convicted of two counts of violating a victim's constitutional rights by pepper spraying and punching the victim in the head, and sentenced the Defendant to serve 100 months (*United States of America v. Jeremy C. Mooney*, 2:22-cr-201). Said Defendant did not take accept responsibility. A co-defendant who did take responsibility and entered a guilty plea to deprivation of civil rights under the color of law was sentenced to six months of imprisonment. (*United States of America v. William Stansberry,* 2:22-cr-201(2)).

Defense Counsel submits that the above-styled cases and their associated conduct incorporated by the plea agreements are much more egregious than the instant case, and that this case should be treated similarly. As such, Defense Counsel requests this Court sentence the Defendant to bottom of the range and impose a sentence of 84 months of imprisonment.

**(a)(7) the need to provide restitution to any victims of the offense.**

As of the Final PSR, restitution information had not been provided and was "to be determined." (ECF No. 82, PSR ¶141, PageID#374).

E. **CONCLUSION**

Defendant Andrew Mitchell has accepted responsibility and has expressed remorse for his actions. A sentence of 84 months of imprisonment would be a sufficient but not greater than necessary sentence pursuant to 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Mark C. Collins
**MARK C. COLLINS (0061207)**
COLLINS & STEPHENS CO., LPA
150 E. Mound Street, Suite 308
Columbus, Ohio  43215
(614) 443-3100    (614) 413-3902-fax
mark@mcollinslaw.com
kaitlyn@mcollinslaw.com

/s/ *Kaitlyn C. Stephens*
**KAITLYN C. STEPHENS (0095589)**
COLLINS & STEPHENS CO., LPA
150 E. Mound Street, Suite 308
Columbus, Ohio  43215
(614) 443-3100    (614) 413-3902-fax
kaitlyn@mcollinslaw.com
*Attorneys for Defendant Andrew K. Mitchell*


**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2024, I electronically filed the Motion to Continue with Chief Judge Edmund A. Sargus, Jr., using the CM/ECF System, which will send notification of such filing to the following: Kevin W. Kelley, Esq, and Noah Litton, Esq.

/s/ Mark C. Collins
**MARK C. COLLINS (0061207)**


/s/ *Kaitlyn C. Stephens*
**KAITLYN C. STEPHENS (0095589)**

12